191174 Christopher O. Brandt v. Joseph Fitzpatrick Good morning. I would like to first request, please, two minutes for rebuttal. Yes. May it please the Court, my name is Cynthia Dill and I'm privileged to represent Plaintiff Appellant Christopher Brandt, a decorated veteran of the United States Navy with a distinguished record of public service who was not rehired as a correction officer at the Maine Department of Corrections in March of 2014, he alleges, because of race. The District Court's summary judgment order should be reversed and Mr. Brandt granted his stay in court because sufficient evidence of race-based discrimination has been presented to raise genuine issues of racism pursuant to 42 U.S. Code 2000E-2M and retaliation pursuant to 42 U.S. Code 2000E-3. First, with respect to his mixed motive claim, to prevail, Mr. Brandt must demonstrate that race was a motivating factor in the Department's decision to not rehire him as a corrections officer even though other factors may have also motivated the decision. The issue of fact in dispute is whether race was a motivating factor that contributed to Mr. LaPlante's impression and doubt about Brandt's veracity. What evidence is in the record of a discriminatory intent in any of the actions you claim? Because the only reason given for not rehiring Mr. Brandt is false, a jury could reasonably infer... And that is? I'm sorry, you're on the way. What is false? Mr. Brandt did not lie. The reason given for not rehiring Mr. Brandt as a corrections officer, which he was clearly qualified to perform the duties of the job, is that he lied and he presented an ethics issue involving Jiglio, or Giglio, I don't know how to say it. It's undisputed. The district court found that there's no lie. Mr. Brandt did not lie. Let's go from there. Is that enough? That is enough for a jury to infer that the real reason was race discrimination because there's no other plausible explanation for not rehiring him. Unfortunately, you're in a bad circuit for that argument because this circuit has held that assuring that pretext is not enough is not enough. Under the motivating factor, under the statute, if it's not... A false pretext, I meant to say. I phrased it wrongly. A false pretext is not enough. You have to show more evidence than that. Well, in this case, there's clearly more evidence. Mr. Brandt was hired for the position. There's no other black probation officers. He had complained about race discrimination. His reputation for honesty and ethics were superior. He was recommended by supervisors in the position. They went outside the usual hiring process and made a false accusation that he lied. Because their explanation for not rehiring him is false and there's no other plausible explanation for not rehiring him, a reasonable jury could find that race was a motivating factor because black dishonesty is a stereotype. And in the Burns case, this court relied on a sexual, you know, sex-based stereotype that women can't be leaders. Well, there's a stereotype. Black men are dishonest. And that's why a jury could conclude that since Mr. LaPlante had no other reason to disbelieve... Yes. So the fact that it was false doesn't negate the fact that LaPlante may have been given incorrect information that he acted upon. Well, except that just weeks prior, Mr. LaPlante had taken Mr. Brandt out in the hallway in an inappropriate interviewing technique, which Landry admitted was the case, and asked him about the Bureau of Prison's job. And on that day, Mr. Brandt told Mr. LaPlante, the reason why I'm coming back to the Department of Corrections is because of a hiring freeze. That was true on that day, and Mr. LaPlante had no reason to not believe him. But nevertheless, he didn't. And then he went outside the usual hiring practice and spoke with a woman he described several times as evasive. This is a long-term law enforcement officer who relied on unsubstantiated hearsay of an evasive person about a fact. In contrast to a man who had this exemplary record of public service, to accuse him of an ethics issue that would forever put his law enforcement career in jeopardy is a jury could find a motivating factor was race. The information may have been evasive, but it was certainly specific. But it was not his job to do that. Mr. Landry, the top guy who made the ultimate decision, asked Valerie Norman to do a rehire interview. Valerie Norman interviewed Mr. Brandt. Valerie Norman did not disbelieve what Mr. Brandt said. Mr. LaPlante, on his own, made this call, allegedly. I don't believe him. I think a jury would not believe him. I don't believe he made the call. In any event, he reported that Berlin was in a hiring freeze. That's simply not true. The district court found Mr. LaPlante, Mr. Brandt did not lie to anyone about anything. At no time did he lie. But Mr. LaPlante just thought he was a liar. And he used a stereotype a jury could find because there was no other reason to think he was a liar, except that he was a black man. And that black men are often thought to be untruthful. That is a stereotype. Now, you may not agree with it. Where did you get this phrase? I'm sorry. I'm not familiar with it. Well, black dishonesty is a stereotype, according to a law review article that I cited in my brief, as well as a case out of Missouri, the Equal Employment Opportunity Commission has said in the Missouri case that's cited in my brief, that black dishonesty is a stereotype. Now, in the Burns case, this court relied on a law review article for the proposition that women can't be leaders is a stereotype. And this court should let the jury decide. The nuance around this is for juries to find that there's discriminatory animus. You have to hear the witness speak. And in this case, it's undisputed that the reason given by the department for not rehiring my client is that he lied, that he presented an ethics issue involving giggle. That's not true. We know that. Because it's not true, under the Reeves versus Sanderson plumbing case, a jury could reasonably infer that a motivating factor is because he was black. And Mr. Brandt, my client, we believe the district court's decision with respect to the motivating factor claim should be reversed and he should have his day in court. The reason given was not true. The Supreme Court said if the reason given is not true, that's enough to show, to have evidence of pretext. There's no other evidence. The department can't offer any other reason for not hiring him except for he lied. He lied. Counsel, counsel, can I just ask you one question? I thought the party stipulated that LaPlante believed that he had lied. No, this is, so this is what's, it's not, what my client, me, on behalf of my client admitted is if you look to the consolidated statement of material facts, paragraph 130, is that Mr. LaPlante, may I continue? Thank you. The statement of fact is Deputy Superintendent LaPlante was under the impression that Berlin was not hiring, was not under a hiring freeze and doubted the information that Mr. Brandt provided. Yes, we did admit that. We admitted he had an impression that Mr. Brandt was dishonest. That's the case. The question isn't whether he had an impression, it's why. The first part of that, the impression that they were not under a hiring freeze. It's not, we, well why would he have the impression that they're not under... No, but you stipulated that he was under that impression. We were stipulating that he was under the impression and we're, our argument is that impression itself is a cognitive bias. There's no basis for having the impression or doubting Mr. Brandt at that time. What he was saying was true. Berlin was under a hiring freeze. Mr. Brandt's job did fall through because of hiring freeze. The only reason why he could have an impression, a jury could find, is because Mr. Brandt is black. So we did admit that he had an impression. It's a false impression. Did you make the bias argument to the district court? Yes, I did, Your Honor. I did make the biased argument and unfortunately it was a huge factual record when I got the case and it slowly, through the summary judgment process, got narrowed down. The essence of this case is just that. It's that Mr. LaPlante had an impression of a client that was not based on evidence, that was false, and that was used to not hire him for a job that he was clearly qualified to do. All right. Thank you. Thank you. Good morning. May I please have the floor? My name is Kelly Morrow and I represent the Maine Department of Corrections in Scott Landry. The grant of summary judgment in this case was appropriate. Whether this case is analyzed under a mixed motive analysis or a pretext analysis with regard to the race discrimination claim, Mr. Brandt still has to show some evidence of discriminatory animus on the part of the department. And based on this record, he has not done so. The crux of Mr. Brandt's argument, it seems to be a couple of factors. One of the elements seems to be that the department exhibited racial animus toward him in 2014 based on some actions that it engaged in in 2013 during interviews of him. Mr. Brandt argues that using the term black and white thinker to describe him is a racial stereotype. I would submit that no reasonable person would conclude based on this record that black and white thinker would be attributed as a racial stereotype. In fact, Mr. Brandt described himself as a black and white thinker when it came to drugs during one of those interviews. Mr. Brandt also argues that Scott Landry exhibited racial animus when he rushed to accept so-called bad information from Mr. LaPlante regarding the alleged hiring freeze at Berlin. However, the record reflects that Landry reasonably believed what his second-in-command told him, LaPlante, about the fact that Berlin was not in a hiring freeze and even when the hiring freeze wasn't a fact, Berlin had a waiver. Mr. Brandt has admitted that Mr. LaPlante had contacts in the correctional field and based on his contacts, he had the impression that Berlin was not in a hiring freeze and he doubted Mr. Brandt's explanation for why he was coming back to the Department of Corrections and why his job at Berlin fell through. So based on his contacts and based on this impression, Mr. LaPlante called Berlin, spoke with somebody in HR, received information that Berlin was not in a current hiring freeze and even when there was a hiring freeze, Berlin had a waiver because of staffing shortages. Mr. LaPlante had no reason to disbelieve that information from this person at Berlin. The record reflects that it's undisputed that Mr. LaPlante believed based on this information that Mr. Brandt had lied about the reasons why his job fell through. Mr. LaPlante gave this information to Scott Landry. Excuse me, counsel. Could you just hold right there for just a few minutes? We need to take a quick break. Sure. All rise. The court apologizes, but some things can't be avoided. You can take your seat if you want. If you have a minute to gain your momentum, regain your momentum, you're entitled to it. Thank you. So getting back to whether there is evidence of racial animus or retaliatory animus on the Mr. LaPlante had no reason to disbelieve the information that he got from the human resources person in Berlin. Mr. LaPlante relayed this information to Mr. Landry, the superintendent of the main correctional center. Mr. Landry took in the information and had concluded that based on this, Mr. Brandt had lied about the reason why his job at Berlin had fallen through and determined not to rehire him as a correctional officer. Mr. Brandt also cannot show that he was treated any differently from other people who came back to the main correctional center for rehire as a correctional officer. There is evidence in the record that John Doe came back at some point. Was there any more discovery done around the issue of this phone call? Any more delving into who he may have spoken with or phone records or anything like that? There was not. Both Mr. Landry and Mr. LaPlante were deposed and Mr. LaPlante testified that he called and spoke with the HR person at Berlin. He looked up the phone number, called the HR person. He asked the HR person some questions about whether Mr. Brandt had actually applied and she was evasive about that information. But he also asked the question as to whether Berlin was under a hiring freeze and she gave the information that Berlin was not in a current hiring freeze and that even when there was a hiring freeze, Berlin had the waiver because of staffing shortages. Although he said that some of the information she gave, she was evasive about some of the information, he did not make that qualification about the information regarding the hiring freeze. But there was never any effort to determine the identity of the person he allegedly spoke with? He may have known at the time. He did not make any notes of the conversation, so he did not know at the time he was deposed who that person was. He just said it was a person in the Human Resources Department. And he did write the email right after he spoke with that person on the same day that he spoke with that person to give the information to Mr. Landry. Do we know anything, I mean the record says that Mr. Brandt was the only African American in this particular department. This is New Hampshire. I'm sorry, this is yesterday too. This is May. Do we know anything about African American applicants for these positions? For the correctional officer positions? Yes. There's not a lot of information in the record about correctional officer positions. Scott One of them is a deputy warden. There's another person who's a sergeant who works within the facility and there was testimony about one other person who works at the main correctional center. But we don't know, for instance, if there were other people who applied and were turned down who might have similar claims. There's nothing in the record. Now the only other information in the record is about John Doe who came back to, who originally left the main correctional center and then came back later to work as a correctional officer. We don't know, based on the consolidated statement of facts, we don't know what the reason was that John Doe gave for coming back. But there is a statement in the record that Mr. Landry had no reason to, Mr. Landry and Mr. LaPlante had no reason to doubt the reason given by John Doe for his coming back so there was no reason to check on his story because there was no reason to doubt what he was saying. Do we know the race of John Doe? We don't. That's not in the record. So Mr. Brandt can't show that he was treated any differently than somebody who was not African American in that regard because we don't know the race of that person. In the deposition, was there any testimony about the deposition of LaPlante, why he was asking the Berlin facility person questions about whether Mr. Brandt had applied there? Because really the only question he needs to ask is whether they have a hiring freeze and an exemption from it. Why is he asking these other questions? Is there anything that came out in the discovery about that? I can only speculate. I don't think there is anything really in the record as to why he was asking those questions. I can just speculate that he probably wanted to just get some more information because he had doubts about what Mr. Brandt was saying so I think he was asking more questions to try to figure out whether he was telling the truth. There is really nothing in the record. Why would he have doubts? Because he had the impression, which is undisputed, he had the impression that Berlin was not under a hiring freeze. So that's the only doubt that I can recall from the record that he had? Correct. So he only had to ask one question. I'm just trying to understand why he's asking these other questions. Again, I don't know. There's nothing in the record that I'm aware of. Does that raise the fact that he was asking these other questions which may have been personal in nature and subject to nondisclosure by HR? Does that raise an inference that he was engaging in discriminatory conduct that should go to the jury? I don't think so. I think that does explain... Or stereotyping? Black stereotyping? I don't believe so, no. I think looking at the record as a whole, it shows that he had legitimate reason for asking the questions. It also would explain why the HR person was being evasive as to the answers to those questions because that information would be confidential personnel information. So that would explain why she was being evasive. But I don't think that that would show any racial animus or retaliatory animus. I think he was just trying to get information to get to the bottom of what Mr. Brandt was saying. To address whether... I'm sorry, just before you leave that... My recollection is that in the summary judgment order, the district court raised the possibility of the implicit bias theory, but I thought the district court said that the plaintiff had not advanced that, but counsel said today that they had advanced it. The district court did note it in a footnote that... I think the district court noted that it could be an issue in cases if there were enough evidence in the record to advance that theory, but in this record there was no evidence. So it was based on the lack of evidence as opposed to the plaintiff not pressing the issue. Correct. Okay, I got it now. Thank you. Do you need more time? Because we did interrupt you. I just wanted to address one other point raised by Judge Toria about whether it matters that... Whether Mr. Brandt lied or not in the end, does that matter? That does not create a jury question. There is case law that says what matters is what the department believed at the time, whether it believed its reason to be credible. In this case, the department believed at the time that Mr. Brandt had lied based on the So ultimately, it doesn't matter whether Mr. Brandt lied. It's what the department believed because we're looking at whether there was discriminatory or retaliatory intent here. And the decision maker is Landry? Landry, yes. Okay, but you're not arguing that LaPlante's knowledge and whether his belief was good faith is irrelevant given that Landry... You're not arguing that Landry could rely on that information if LaPlante was acting in bad faith? Or are you? I don't believe LaPlante was acting in bad faith. If there were evidence in the record that he were acting in bad faith, then it could be a cat's paw claim, but I think the district court rejected that as well. Got it. Thanks. Thank you. Thank you very much. I'd just like to address a couple of things, hopefully quickly. With respect to the race situation at the Department of Corrections, there's never been a black probation officer or a black probation officer assistant, and my client applied several times, was denied. He felt he was competent. When he wasn't hired, he wrote to the commissioner and said that there was a diversity problem in the department. With respect to the hiring freeze, if you look in the appendix at page 77, there's evidence that there was a hiring freeze. There's no dispute there was not a hiring freeze. There was. And Mr. LaPlante's impression that there wasn't was not a preexisting understanding, as the district court characterized it. It was a misunderstanding. It was a false impression. And false impression is similar to making an assumption or a stereotype. So the fact is that Mr. LaPlante, my client, did not lie. Mr. LaPlante called Berlin, allegedly, did not make any notes, testified in this deposition. He did not ask the person's name. He did not make any record of it, and that the woman was evasive. He then relied on that information, contrary to the honest information that he got from my client, and almost tanked this man's law career by accusing him of an ethics issue. A jury could reasonably find that a motivating factor was race, because there's other evidence from which a jury could infer racial animus. Mr. Brandt testified that in his experience for interviewing with numerous law enforcement jobs, this was the only situation where the interviewers were brandishing weapons, that he was treated hostily by Landry in one of the interviews and cut short and escorted out. The hiring process was unusual. What do you mean by brandishing weapons? They had him exposed? The deposition transcript was that my client was being deposed, and he said he thought it was kind of funny that in this interview, the people who were interviewing were armed. He said in several other interviews and no other time were they armed. Wait a minute. Several other interviews with this particular department? Several other interviews. He's been in his law enforcement career. What was the practice in Maine, in Maine collection? So the state, the department, offered as an argument to the district court that, well, probation officers are law enforcement officers, therefore them having a gun during the interview is reasonable. Now, that's what they presented. My client presented evidence in his deposition testimony. But now whether it's reasonable, is it regular? That's what I'm trying to figure out. And brandishing has a specific definition, which means that they were essentially pulling the guns on him, as opposed to just holstering a gun as they were there. His deposition testimony is in the record, and I can get that specific. Brandishing may be my word. That's an issue of fact, is my point. It's unusual maybe in different states, but is it unusual in this particular department, or do they just regularly wear guns? Well, that's an excellent question, Your Honor, and it's a question that a jury should explore. Well, there's no evidence in the record right now. The evidence in the record is my client has been on several interviews for law enforcement positions, and this is the first time that the interviewers had weapons, and that he was escorted out of one of the interviews, which was abruptly, by somebody who had a weapon, and that his remarks were cut short. So this is just additional evidence, in addition to him falsely being accused of lying, that should raise enough evidence of a motivating factor, because there's no other plausible explanation for not rehiring my client for a job that he performed well, that he was recommended to be rehired. And I'll just add one more point. Mr. Landry himself left the Maine Department of Corrections. If you look at the first page of his deposition, which appears in the appendix, he left the Maine Department of Corrections for a year and a half, and came back. It's not unusual for these people to go in and out. My client thought he had a job with the feds. It fell through. He wanted to come back for a job he was clearly qualified for. There was a hiring freeze. The hiring freeze was lifted on February 10th. LaPlante calls Berlin, allegedly. Counsel, we have all those facts. Thank you. Thank you. Sorry. Thank you very much.